UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILLIAM ROBERT VANNOTE, | § § |
| Plaintiff, | § § |
| v. | §  Case # 1:18-cv-1143-DB § |
| COMMISSIONER OF SOCIAL SECURITY, | §  MEMORANDUM DECISION § AND ORDER |
| Defendant. | § |

## INTRODUCTION

Plaintiff William Robert VanNote ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied his application for Disability Insurance Benefits ("DIB") under Title II of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 16).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 8, 15. Plaintiff also filed a reply. *See* ECF No. 18. For the reasons set forth below, Plaintiff's motion (ECF No. 8) is **DENIED**, and the Commissioner's motion (ECF No. 15) is **GRANTED**.

## BACKGROUND

On March 28, 2012, Plaintiff protectively filed his DIB application, alleging a disability beginning October 30, 2011 (the disability onset date), based on: chronic migraines, right arm tendinitis, right frozen shoulder, vertigo, anxiety, depression, eczema of the feet and hands, fibromyalgia, and hearing loss. Transcript (Tr.) 144-45, 157. Plaintiff's claim was initially denied on September 21, 2012, after which he requested an administrative hearing. Plaintiff appeared and

testified at a hearing held on October 4, 2013. Administrative Law Judge Donald McDougall ("ALJ McDougall") presided over the hearing. Plaintiff was represented by Stephen Brooks, an attorney. ALJ McDougall issued an unfavorable decision on December 19, 2013.Tr. 22-30. On December 18, 2014, the Appeals Council denied Plaintiff's request for review (Tr. 1-6), and the ALJ's decision became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g). Plaintiff thereafter appealed to this Court. On November 28, 2016, the Honorable Richard J. Arcara adopted the Report and Recommendation of Magistrate Judge Jeremiah J. McCarty and remanded the case for further proceedings based on ALJ McDougall's failure to properly evaluate Plaintiff's migraines and his sit/stand option. Tr. 462-471.

Plaintiff appeared and testified at a second hearing held in Buffalo, New York, on April 17, 2018. Tr. 391-427. Administrative Law Judge Paul Georger (the "ALJ") presided over second the hearing. Jay Steinbrenner, an impartial vocational expert ("VE"), appeared and testified at the hearing, and Justin Willard, M.D., an impartial medical expert, appeared and testified telephonically,. Plaintiff was represented by Nicholas DiVirglio, an attorney. The ALJ issued an unfavorable decision on July 5. 2018 (Tr. 338-351), after which Plaintiff appealed directly to this Court.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more

than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

**II.     The Sequential Evaluation Process**

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id.* § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

3

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his July 5. 2018 decision:

1. 1. The claimant last met the insured status requirements of the Social Security Act on December 30, 2016;

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of October 30, 2011 through his date last insured of December 30, 2016 (20 CFR 404.1571 *et seq*.);

3. Through the date last insured, the claimant had the following severe impairments: degenerative disc disease of the lumbar and cervical spine, migraine headaches, and binaural hearing loss (20 CFR 404.1520(c));

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526);

5. Through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) [1] except the claimant can occasionally climb ramps and stairs, ladders, ropes or scaffolds. The claimant can occasionally balance, stoop,

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

4

kneel, crouch, and crawl. The claimant can perform jobs requiring basic communication in accordance with SSR 96-9p.

6. Through the date last insured, the claimant was capable of performing past relevant work as a social services aide. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565);

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from October 30, 2011, the alleged onset date, through December 30, 2016, the date last insured (20 CFR 404.1520(1)).

Tr. at 338-351.

Accordingly, the ALJ determined that, for a period of disability and disability insurance benefits filed on March 28, 2012, the claimant was not disabled under sections 216(i) and 223(d) of the Social Security Act. *Id.* at 351.

## **ANALYSIS**

Plaintiff asserts two points of error: (1) the ALJ failed to properly evaluate the opinion of treating physician Stanley Michalski, M.D. ("Dr. Michalski); and (2) the ALJ relied on "the silence of medical opinions and his lay interpretation of the bare medical findings in the record" to determine Plaintiff's RFC. ECF No. 8-1 at 1, 14-25. The Commissioner argues in response that the ALJ properly afforded little weight to the opinion of Dr. Michalski because it was inconsistent with Dr. Michalski's own treatment records, as well as inconsistent with the opinions of two consulting physicians. *See* ECF No. 15-1 at 2. The Commissioner also argues that the ALJ properly made the RFC determination based on the record as a whole, and the record was not silent, but rather, contained substantial opinion and other medical evidence that was sufficient for the ALJ to properly make the RFC determination. *Id.* Further, argues the Commissioner, Plaintiff's argument that the ALJ cannot base the RFC on the silence of medical opinions is erroneous because the burden is on the Plaintiff, not the ALJ, to establish limitations of RFC. *Id.*

5

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

## I. The ALJ Properly Considered and Weighed The Medical Evidence.

Plaintiff alleges the ALJ erred in giving little weight to Dr. Michalski's functional capacity assessment completed November 28, 2012, some years before Plaintiff's last hearing. Tr. 295. As discussed in further detail below, however, the Court finds that the ALJ thoroughly discussed the medical evidence of record and gave substantial reasons for according the assessment little weight. Upon extensive review of the numerous medical records produced in this case, the Court finds that many have little bearing on Plaintiff's points of error, as Plaintiff often presented for problems with sinus infections, nail dystrophy, and eczema. *See, e.g.*, Tr. 236, 760-65, 771-72, 782-85, 794-96, 813. Furthermore, even when being seen for his sinus problems, Plaintiff's back pain was noted to be mild. *See, e.g.*, Tr. 650.

The opinions of Plaintiff's treating physicians should be given "controlling weight" if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record," 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, a treating physician's opinion is not afforded controlling weight when the opinion is inconsistent with other substantial evidence in the record, such as the opinions of other medical experts. 20 C.F.R. § 404.1527(d)(2); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). If the ALJ gives the treating physician's opinion less than controlling weight, he

must provide good reasons for doing so. *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998).

If not afforded controlling weight, a treating physician's opinion is given weight according to a non-exhaustive list of enumerated factors, including (i) the frequency of examinations and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the physician's opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the physician has a relevant specialty. 20 C.F.R. §§ 404.1527(c) (2), 416.927(c)(2); *see Clark*, 143 F.3d at 118; *Marquez v. Colvin*, No. 12 CIV. 6819 PKC, 2013 WL 5568718, at *9 (S.D.N.Y. Oct. 9, 2013). In rejecting a treating physician's opinion, an ALJ need not expressly enumerate each factor considered if the ALJ's reasoning and adherence to the treating physician rule is clear. *See, e.g., Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013).

In his November 28, 2012 functional capacity assessment, Dr. Michalski indicated that Plaintiff could frequently lift 10 pounds, stand and/or walk 2 to 3 hours per day, and sit less than 6 hours a day. Tr. 295. He indicated that Plaintiff had to alternate sitting and standing; his ability to push/pull was limited by shoulder and leg pain; he had limitations in bending and climbing; and he had to lie down as needed for back and leg pain. *Id*. Shortly after the functional capacity assessment, Plaintiff was noted to be exercising 3-4 times a week; his back and spine showed no abnormalities; and he had normal range of motion for his age. Tr. 653. In September 2013, Plaintiff presented with low back pain from bending over. Tr. 655-56. He reported he had injured his back 18 years ago and periodically had symptoms. *Id*. An examination revealed full range of motion; SLR mildly positive on right; balance and gait normal; and DTRs normal. Tr. 658.

In December of 2013, there is a notation in the records that Plaintiff's lower back pain had improved. Tr. 650. In April 2014, x-rays of his cervical spine showed joint and degenerative disc

disease. Tr. 676. In March 2015, Plaintiff saw Dr. Michalski complaining of neck crunching and pain and "[being] constantly aware of his neck." Tr. 685-686. On examination, his C spine was tender on the right side; his range of motion was "ok;" and his "shoulders rotate[d] well." Tr. 686. In November 2015, he had a general adult medical exam without abnormal findings. Tr. 700. His neck exam was noted to be normal. Tr. 703. As noted by the ALJ, Plaintiff saw consultative examiner Donna Miller, D.O. ('Dr. Miller"), in March 2016. Dr. Miller opined that Plaintiff had only moderate limitations in heavy lifting, bending or climbing. Tr. 742. In March 2016, lumbar x-rays showed only degenerative changes, and examination of the right shoulder was negative. Tr. 743-44. In December 2016, x-rays of the lumbar spine showed degenerative disc disease; normal range of motion on flexion, extension, and neutral views; and no subluxation. Tr. 796. In July 2016, records from the Buffalo Medical Group noted normal range of motion in upper and lower extremities. Tr. 769. In September 2017, records from the same facility noted negative for stiff joints. Tr. 792. The latest record from Dr. Michalski recorded "low back unfolds well, not tender, SLR ok." Tr. 810. In addition, Plaintiff's cervical spine and shoulders, as well as his elbows, wrists, and finger joints, and his hips, knees and ankles, were all noted as "ok." *Id*.

Consistent with the treating physician rule, the ALJ acknowledged that Dr. Michalski was a treating and examining source. Tr. 348. While those factors tend to increase the weight generally entitled to a medical opinion, they are not determinative. *See Crowell v. Comm'r of Soc. Sec. Admin.*, 705 F. App'x 34, 35 (2d Cir. 2017). Where the ALJ discounts a treating physician's opinion, the ALJ must set forth "good reasons" for doing so. *Clark*, 143 F.3d at 118; *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008). The ALJ did so here. Specifically, the ALJ explained that Dr. Michalski's opinion was not consistent with the correlating and contemporaneous treatment records, which reflected mostly normal musculoskeletal and neurological findings. Tr.

8

348. As discussed above, many of Dr. Michalski's findings were either normal or reflected only mild abnormalities.

The ALJ also noted that Dr. Michalski's opinion was inconsistent with other medical evidence in the record reflecting only mild deficits, and he noted that the findings of the consultative examiners did not reveal major abnormalities. Tr. 348. As noted above, Dr. Miller opined that Plaintiff had only moderate limitations in heavy lifting, bending, and carrying (Tr. 742), which was inconsistent with Dr. Michalski's opinion that Plaintiff could not perform even sedentary activity. Plaintiff also underwent a consultative examination with Hongbiao Liu, M.D. ("Dr. Liu"), on August 31, 2012. Tr. 268. Dr. Liu's examination revealed a normal gait and an ability to walk on his heels and toes; Plaintiff could squat fully, and his stance was normal; he needed no help changing for the examination or getting on and off the exam table; and he could rise from his chair without difficulty. Tr. 269. Musculoskeletal examination revealed mild limitations in spinal range of motion. Tr. 270. His right shoulder had elevation to 140 degrees (normal is 180); abduction to 140 degrees (normal is 150) adduction to 25 degrees (normal is 30-50); internal rotation to 65 degrees (normal 70 to 90); and external rotation to 85 decrees (normal is 90).[2] Tr. 270. Straight leg raising was mildly positive, and Plaintiff had full ROM of his hips, knees, and ankles bilaterally. *Id*. Plaintiff's right upper arm sensation was decreased, but his strength was full throughout; his grip strength was 5/5 bilaterally. *Id*. Dr. Liu opined that Plaintiff had mild limitations in lifting, carrying, bending, kneeling, prolonged standing, and walking. Tr. 271.

Examinations by other providers were likewise inconsistent with Dr. Michalski's opinion. In September 2013 (after Dr. Michalski's November 28, 2012 opinion), Plaintiff saw Mary

---

[2] *See* https://www.healthline.com/health/shoulder-range-of-motion for normal examination ranges.

Katherine Kolbert, M.D. ("Dr. Kolbert"), complaining of a two-day history of back pain after he bent over to pick something up. Tr. 301. Dr. Kolbert's examination revealed intact strength and normal gait as well as full ROM of Plaintiff's spine with only mildly positive straight leg raising on the right and tenderness to palpation of the paraspinal muscles. Tr. 303. Plaintiff saw Joseph A. Riccione, D.O. ("Dr. Riccione"), on July 26, 2016. Tr. 767. Dr. Riccione documented normal ROM of Plaintiff's extremities and an unremarkable neurological examination with no focal or motor or sensory deficits. Tr. 769.

Plaintiff argues that the ALJ was unqualified to evaluate Dr. Michalski's opinion based on the medical findings in his and other providers notes. *See* ECF No. 8-1 at 16. However, agency regulations specifically require the ALJ to evaluate opinion evidence precisely on that basis. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."); *see also Newell v. Colvin*, No. 15-CV-6262P, 2016 WL 4524809, at *14 (W.D.N.Y. Aug. 30, 2016) (ALJ properly discredited opinion based upon the "largely normal" findings from the claimant's mental-status examinations); *Downs v. Colvin*, No. 6:15-CV-06644(MAT), 2016 WL 5348755, at *4 (W.D.N.Y. Sept. 26, 2016).

Based on the foregoing, the ALJ's evaluation of Dr. Michalski's functional capacity assessment, in light of Dr. Michalski's own treatment notes and the findings of other medical sources in the record, is entirely proper. *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that opinion."); *see also Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) (finding that the ALJ reasonably discounted two medical opinions which were inconsistent with the treatment record and the claimant's daily activities); *Abarzua v. Berryhill*, 754 F. App'x 70, 71 (2d Cir. 2019) (ALJ

may consider examination findings of other physicians including consulting physicians as inconsistent with a treating source opinion).

Plaintiff also argues the ALJ was not entitled to rely on the testimony of the medical expert at the hearing to discount Dr. Michalski's opinion because the expert did not actually provide an opinion. *See* ECF No. 8-1 at 17. However, the ALJ did not discount Dr. Michalski's opinion in any significant way based on the testimony of the medical expert. The ALJ clearly relied primarily on the lack of supporting medical findings in Dr. Michalski's treatment notes, as well as the other findings and opinions in the record, including those of the consultative examiners. Tr. 348. Thus, Plaintiff's argument in this regard is without merit.

Plaintiff also takes issue with the ALJ's statement that subsequent evidence showed Plaintiff was not as limited as described by Dr. Michalski, arguing the ALJ's statement was "conclusory" and "unsupported," as well as inconsistent with Dr. Miller's opinion. ECF No. 8-1 at 17-18. This argument also fails. The ALJ extensively discussed the medical evidence postdating Dr. Michalski's opinion and as recited above, provided numerous examples of medical evidence inconsistent with Dr. Michalski's assessment. Furthermore, Plaintiff mischaracterized Dr. Miller's opinion, as the record reflects that Dr. Miller's opinion was not consistent with Dr. Michalski's opinion. Dr. Miller's findings were less restrictive than Plaintiff's treating physician rendered some three years before, and she indicated that Plaintiff had only moderate limitations in heavy lifting, bending, and carrying. Tr. 742. Moderate limitations are consistent with light work, which support the ALJ's RFC determination *See, e.g.*, *Heidrich v. Berryhill*, 312 F. Supp. 3d 371, 374 n.2 (W.D.N.Y. 2018); *Gurney v. Colvin*, No. 14-CV-688S, 2016 WL 805405, at *3 (W.D.N.Y. Mar. 2, 2016); *Harrington v. Colvin*, No. 14-CV-6044P, 2015 WL 790756, at *14 (W.D.N.Y. Feb. 25, 2015); *Carroll v. Colvin*, No. 13-CV-456S, 2014 WL 2945797, at *4 (W.D.N.Y. June 30,

2014). Based on the foregoing, the ALJ properly weighed all of the medical opinion evidence and determined that Plaintiff's RFC fell in between the mild limitations described by Dr. Liu and the severe limitations described by Dr. Michalski. *See Abarzua*, 754 F. App'x at 71.

Thus, based on the evidence in the record as a whole, the ALJ properly assigned only little weight to Dr. Michalski's functional capacity assessment. *See Gray v. Colvin*, No. 13-00955, 2015 WL 5005755, at *5 (W.D.N.Y. Aug. 20, 2015) ("The ALJ was within his discretion to accept certain portions of [the treating physician]'s opinion, but reject those that were not supported by her own treatment notes or other substantial record evidence."); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (holding that it is within ALJ's discretion to sort through and resolve conflicts in evidence).

## II.    The ALJ Properly Determined Plaintiff's RFC.

Plaintiff also argues that the ALJ improperly relied on the silence of two medical opinions and his own lay opinion to determine Plaintiff's RFC. *See* ECF No. 8-1 at 18. Contrary to Plaintiff's argument, and as explained extensively above, the ALJ properly weighed all of the medical evidence, including the findings and opinions offered by two consultative examiners, both of whom indicated that Plaintiff had at most some moderate functional limitations. As such, the ALJ did not rely on the silence of two opinions and his own lay interpretation of the evidence. While a medical opinion may be silent on some areas of limitation, that does not mean that the ALJ may not consider the opinion insofar as it describes limitations in some areas as support for the RFC. *See, e.g.*, *Leonard v. Comm'r of Soc. Sec.*, No. 5:14CV1353 GTS WBC, 2016 WL 3511780, at *6 (N.D.N.Y. May 19, 2016), *report and recommendation adopted sub nom. Leonard v. Colvin*, No. 5:14-CV-1353, 2016 WL 3512219 (N.D.N.Y. June 22, 2016).

This Court has held that where a medical source was asked to opine about limitations, and only endorsed limitations in some areas, it is reasonable to interpret the report as an opinion that the limitations were only in those areas that were endorsed. *See Morgan v. Berryhill, Acting Comm'r of Soc. Sec.*, No. 18-CV-484-HKS, 2019 WL 4871502, at *3 (W.D.N.Y. Oct. 3, 2019). In this case, the ALJ relied on the combination of the medical evidence in the record, including the findings of various treating and examining physicians, and properly resolved the conflicts between the opinions of Drs. Liu, Miller, and Michalski. The fact the RFC does not precisely mirror any one of those opinions does not mean the ALJ's opinion is not supported by substantial evidence. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.") (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict."); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that "the ALJ's RFC assessment did not perfectly match [a medical] opinion, and was in fact more restrictive than that opinion, is not grounds for remand."). Furthermore, the ALJ did not, as Plaintiff asserts, reject all of the medical opinion evidence. He simply afforded the various opinions varying degrees of weight, while declining to afford any opinion controlling weight. This was within his discretion as the trier of fact. *See Matta*, 508 F. App'x 53. The Court, therefore, finds there was a sufficient basis for the ALJ to make an RFC determination.

In addition to the medical opinion evidence and relatively benign objective findings, the ALJ considered other evidence when determining the RFC, including Plaintiff's testimony. The

ALJ determined that Plaintiff's subjective complaints were not fully consistent with the record as a whole. In particular, the ALJ found that Plaintiff's daily activities, including household chores, visiting with friends and family, shopping, attending and volunteering at his church, and caring for his grandchildren were inconsistent with his alleged inability to engage in activities consistent with light activity. Tr. 171, 344, 368-71. In fact, one of Plaintiff's treating physicians indicated that he needed frequent exercise such as walking daily. Tr. 317-18. An ALJ may properly consider such activities. *See Krull*, 669 F. App'x 31. While Plaintiff may no longer be able to perform very heavy work, such as carpentry and home remodeling as he indicated, that does not mean he cannot perform light exertional activity. Tr. 170.

The ALJ also considered Plaintiff's history of routine and conservative treatment. Tr. 345. Despite his allegations of severe neck, back, and shoulder pain, Plaintiff used primarily over-the-counter medication, topical creams, and physical therapy. Tr. 405. There was no indication that he was ever a candidate for surgery. Tr. 368. A pattern of conservative treatment weighs against complaints of disabling symptoms. *See Netter v. Astrue*, 272 F. App'x 54, 56 (2d Cir. 2008) (holding that it is proper for an ALJ to cite a claimant's conservative treatment history to support his conclusion that he or she is not disabled); *Shaffer v. Colvin*, No. 1:14-CV-00745 (MAT), 2015 WL 9307349, at *5 (W.D.N.Y. Dec. 21, 2015) (holding that the ALJ properly discredited the plaintiff's claims of a disabling condition noting that her treatment was essentially routine and conservative, consisting of medication management and physical therapy.

The ALJ also observed that Plaintiff's impairments improved with treatment. Tr. 341, 346. Dr. Riccione indicated that Plaintiff's fibromyalgia seemed to be helped with medication and that Plaintiff's current medical regimen was effective for his arthritis. Tr. 769-70. Plaintiff also indicated that physical therapy helped his sciatic nerve pain (Tr. 323) and his neck pain (Tr. 328).

Plaintiff's improvement with treatment was a valid factor for the ALJ to consider when evaluating his subjective complaints. *See* 20 C.F.R. §§ 404.152(c)(3)(iv)-(v) (ALJ may consider the type, dosage, effectiveness, and side effects of any medication or other treatment a claimant has received for relief of pain and other symptoms). Based on all of this evidence, the ALJ reasonably determined that Plaintiff's subjective symptoms were not as limiting as he alleged.

Despite the wealth of evidence in the record, Plaintiff argues that more development is needed. *See* ECF No. 8-1 at 25. However, as discussed above, the record was clearly not "devoid" of evidence relating to Plaintiff's ability to perform work-related activities. *Id*. at 24. The ALJ reasonably made an RFC determination that was more restrictive than the opinion of Dr. Liu and less restrictive than that of Dr. Michalski. It is the role of the ALJ to resolve conflicting medical evidence. "It is for the SSA, and not this [C]ourt, to weigh the conflicting evidence in the record." *Wright v. Berryhill*, 687 F. App'x 45, 48 (2d Cir. 2017) (quoting *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998)). The record before the Court reflects that the ALJ properly took into account the medical evidence in the record on the whole and incorporated into Plaintiff's RFC those impairments and restrictions supported by the record as a whole. *See Johnson*, 669 F. App'x at 46 (explaining that "because the record contained sufficient other evidence supporting the ALJ's determination and because the ALJ weighed all of that evidence when making his residual functional capacity finding, there was no 'gap' in the record and the ALJ did not rely on his own 'lay opinion'").

As previously explained, while the RFC "'may not perfectly correspond with any of the opinions of medical sources in [the ALJ's] decision, [the ALJ] was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.'" *Dougherty-Noteboom v. Berryhill*, No. 17-00243, 2018 WL 3866671, at *9 (W.D.N.Y. Aug. 15,

2018) (quoting *Matta*, 508 F. App'x at 56). Here, the ALJ properly weighed all the evidence available and formed Plaintiff's RFC consistent with the record as a whole.

For all these reasons, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole. Therefore, the Court finds no error. The Commissioner's findings of fact must be upheld unless "a reasonable factfinder would have to conclude otherwise." *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012). Thus, "[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014).

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 8) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 15) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE